IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 03-cv-01424-WDM-MEH

KENT ERIC LeBERE,

    Petitioner,

v.

JAMES ABBOTT, Warden, and
JOHN W. SUTHERS, the Attorney General of the State of Colorado,

    Respondents.

## ORDER ON MOTION TO REOPEN CASE AND
## MOTION TO FILE AMENDED HABEAS PETITION

Miller, J.

This matter is before me Petitioner Kent Eric LeBere's Motion to Reopen the Habeas case (Docket No. 56) and Motion for Leave to File Amended Application for Writ of Habeas Corpus (Docket No. 57).  Respondents partially oppose the motion to reopen and fully oppose the motion to amend (Docket No. 59).  As Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs my review.  *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)).  After reviewing the pertinent portions of the record in this case including the Petition, the order to stay, Petitioner's motions, Respondents' responses, and the state court records, I conclude that the motion to reopen shall be granted and the motion to amend shall be granted in part and denied in part.

PDF Final

## Background

According to the proposed Amended Petition (Docket No. 58-2), after a jury trial in a District Court, Petitioner was convicted of second degree murder and second degree arson on August 13, 1999.  He was acquitted of first degree murder, felony murder, manslaughter, and sexual assault.  Petitioner was subsequently sentenced to forty-eight years imprisonment for the murder conviction and twelve years imprisonment on the arson conviction, to be served consecutively.

At trial, Ronnie Archuleta, a co-prisoner who was housed with Petitioner while Petitioner awaited trial, testified that Petitioner had confessed the crimes to him.  After trial, however, Archuleta contacted Petitioner's attorney and recanted his testimony, stating that his entire testimony was based solely on information provided to him by J.D. Walker, the lead detective in the investigation.  Archuleta executed an affidavit attesting to these facts and further stating that Walker knew that Archuleta's testimony was not based on any personal knowledge, but rather solely on the information provided by Walker.  Based on this information, the Colorado Court of Appeals ("CCA") granted Petitioner a limited remand on May 5, 2000.  After a hearing, the trial court denied Petitioner's motion for a new trial, concluding that the absence of Archuleta's testimony would not have affected the jury's verdict.  The CCA affirmed.  On June 17, 2002, the Colorado Supreme Court denied certiorari.  Petitioner did not petition the United States Supreme Court for certiorari.

On October 16, 2002, Petitioner challenged his sentence pursuant to Colo. R. Crim. P. 35(b).  The motion was denied on May 20, 2003 and Petitioner did not appeal.  On June 23, 2003, acting *pro se*, Petitioner filed a petition for federal habeas corpus

relief (the "Original Petition").[1] The Original Petition set forth three claims: (1) he was unconstitutionally denied a speedy trial because the trial was delayed based on a prosecutor's conflict of interest; (2) he was denied his right to counsel based on the trial court's *ex parte* communications with the jury during deliberations regarding their signed verdict forms; and (3) the CCA erred in affirming the trial court's denial of his motion for a new trial because the trial court applied the wrong standard. After obtaining counsel, however, Petitioner determined that some of his claims were unexhausted.[2] Therefore, on April 20, 2004, Petitioner filed a Colo. R. Crim. P. 35(c) motion, attacking his conviction on several constitutional grounds and seeking a new trial. He simultaneously filed a motion to stay his habeas case (Docket Nos. 12, 14) pending exhaustion of his claims in state court. Respondent partially opposed this motion, arguing that the stay should be limited to Claim 2 because that was the only claim that Petitioner was simultaneously pursuing in state court. Chief Judge Daniel granted Petitioner's motion to stay as to the entire case (the "Stay Order"), but determined that "any new claims Applicant seeks to present in the instant action are subject to the guidelines set forth in 28 U.S.C. § 2244(d)."[3] (Docket No. 16 at 5.) Pursuant to the stay, Petitioner filed

---

[1] I note that I must construe Petitioner's *pro se* pleadings liberally and hold him to a "less stringent standard" for these pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))).

[2] Pursuant the AEDPA, before a district court may consider a habeas petition, the petitioner must have exhausted all available state remedies. 28 U.S.C. 2254(b).

[3] I note that my February 24, 2006 Order for Administrative Closure (Docket No. 48) incorrectly indicated that Chief Judge Daniel's May 5, 2004 Order stayed the case as to only Claim 2. (*See* Docket No. 48 at 1.) The fact is, however, that Chief Judge

monthly status reports on his state court proceedings for the next twenty-two months. (*See* Docket Nos. 20–23, 26–30, 32–37, 40–44, 46–47).

On February 24, 2006, I administratively closed the case, subject to reopening for good cause no later than February 24, 2006. (*See* Docket No. 48). On motions by Petitioner, the deadline for reopening was extended to February 29, 2009. (*See* Docket Nos. 50, 52.) Petitioner's state claims concluded on August 18, 2008 when the Colorado Supreme Court denied certiorari. Approximately six months later, on February 20, 2009, Petitioner timely filed the motion to reopen and the motion to amend his petition at issue in this Order.

## Discussion

With respect to Petitioner's motion to reopen the case (Docket No. 56), I conclude that reopening is appropriate. The case was administratively closed pending the conclusion of Petitioner's state proceedings. As the those proceedings have now concluded and the motion to reopen was timely filed, good cause has been shown for reopening. Therefore, Petitioner's motion to reopen (Docket No. 56) shall be granted.

The more difficult issue, however, arises out of Petitioner's motion to amend his habeas petition. A habeas petition may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. The Federal Rules of Civil Procedure, in turn, provide that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Denial of leave to amend is generally only "justified upon a showing of undue delay, undue prejudice to the opposing party, bad

---

Daniel declined to limit the stay to only Claim 2, instead subjecting any new claims to the statute of limitations for habeas claims. *See* 28 U.S.C. § 2244(d).

faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357,1365 (10th Cir. 1993) (citing *Castleglen, Inv. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993)). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citing *Jefferson County Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)). Therefore, amendment is futile if the claims are barred by the applicable statute of limitations. *See id.* In such a case, leave to amend is not appropriate unless the new claims relate back to the original petition under Rule 15(c). *See Mayle v. Felix*, 545 U.S. 644, 650 (2005).

In this case, there is dispute as to whether the applicable statute of limitations has run. The AEDPA imposes a one-year statute of limitations on the filing of federal habeas petitions. 28 U.S.C. § 2244(d)(1). The statute, however, provides that the period shall be tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). Conversely, "'the filing of a petition for habeas corpus in federal court does not toll the statute of limitations." *Rhines v. Weber*, 544 U.S. 269, 574–75 (2005).

The parties agree that 316 days of the one-year AEDPA period elapsed by the time Petitioner filed his Rule 35(c) motion with the Colorado courts and the motion to stay in this Court on April 20, 2004. I agree. Petitioner's conviction became final on June 17, 2002, when the Colorado Supreme Court denied certiorari. However, pursuant to  28 U.S.C. § 2244(d)(1)(A), the AEDPA period did not begin to run until

Petitioner's time for petitioning for certiorari to the United States Supreme Court expired. *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) ("Under the statute, a petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until - following a decision by the state court of last resort - 'after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed.'" (quoting *Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999))). As the period for filing a petition for certiorari with the United States Supreme Court is ninety days, Sup. Ct. R. 13.1, the AEDPA tolling period began to run on September 17, 2002.[4]

However, the AEDPA period was tolled after twenty-nine days had elapsed when Petitioner filed his Rule 35(b) motion on October 16, 2002. The trial court ruled on Petitioner's Rule 35(c) motion on May 20, 2003 and Petitioner did not appeal within the forty-five day period for appeal. *See* Colo. App. R. 4(b). Therefore, the AEDPA period began to run again on July 8, 2003.[5] On June 23, 2003, Petitioner timely filed his habeas Petition in this court.[6] Such filing, however, did not toll the statute of limitations.

---

[4] Ninety days after June 17, 2002 was Sunday, September 15, 2002; therefore, the deadline for filing the petition for certiorari was Monday, September 16, 2002. *See* Sup. Ct. R. 30.1.

[5] Forty-five days after May 20, 2003 was Friday, June 4, 2003, a legal holiday; therefore, the deadline for filing an appeal was Monday, July 7, 2003. *See* Colo. R. App. P. 26(a).

[6] There is some dispute as to exactly when Petitioner filed his habeas Petition. The Petition is dated June 23, 2003 and, therefore, pursuant to the mailbox rule, *see* U.S. R. Gov'g 2254 Cases 3(d); *Marsh v. Soares*, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000), the Petition is treated as being filed on that date. Respondents, however, argue

*See Rhines*, 544 U.S. at 574–75.  Then, on April 20, 2004, while the Petition was pending and prior to the expiration of the AEDPA period, Petitioner filed his Rule 35(c) motion in state court and the motion to stay the proceedings in this case.  Thus, the AEDPA period was again tolled after an additional 287 days had elapsed.  Therefore, at the time that Petitioner filed his Rule 35(c) motion, a total of 316 days had run on the AEDPA statute of limitations.  Petitioner's Rule 35(c) proceedings became final on August 18, 2008, the day that the Colorado Supreme Court denied certiorari.  *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (holding that the AEDPA period is not tolled during the period in which a defendant may petition for certiorari to the United States Supreme Court on his postconviction motions).  Therefore, notwithstanding the stay—the effect of which the parties dispute—the AEDPA would have begun to run again on August 19, 2008 and would have expired forty-nine days later on October 7, 2008.

As noted above, the parties disagree as to the effect the Stay Order had on the AEDPA statute of limitations.  Respondents argue that the stay did not affect the statute of limitations and the period began to run again after Petitioner's Rule 35(c) motion became final.  Conversely, Petitioner contends that the Stay Order not only stayed the progress of the case in this Court, but also tolled the statute of limitations for all claims

---

that because Petitioner "failed to comply with procedures that would trigger" the mailbox rule, the Petition must be treated as filed on the date it was received by the Court—July 18, 2003.  I disagree, however, as Rule 3(d) does not require any particular action to trigger the mailbox rule (although it notes the manner in which a petitioner "may" show timely filing), and the case law suggests that the mailbox rule should be liberally applied.  *See Marsh*, 223 F.3d at 1218 n.1.  In any case, the Petition was filed prior to the expiration of the AEDPA statute of limitations.

that he was attempting to exhaust in his Rule 35(c) motion. After considering the parties' arguments and reviewing Chief Judge Daniel's order in this case, I conclude that the stay did not toll the statute of limitations for all newly asserted claims.

First, I note that although the decision was issued after the Stay Order issued in this case, the Supreme Court has expressly approved of the "stay and abeyance" procedure for "mixed" habeas petitions[7] employed by Chief Judge Daniel in this case. *See Rhines*, 544 US. at 276. The Court reasoned that the stay and abeyance procedure, employed with some limitations, was effective in addressing the problem that the AEDPA statute of limitations would, at times, bar federal habeas review of some claims if mixed petitions were fully dismissed for failure to exhaust. *See id.* at 275–76. This was essentially the logic Chief Judge Daniel applied when he issued the stay in this case. (*See* Stay Order dated May 5, 2004, Docket No. 16 at 4 ("[I]t appears that Applicant could be barred from raising his claims again in federal court if the action is dismissed. Due to the possibility of jeopardizing the timeliness of Applicant's action if the Application is denied as unexhausted or as a mixed petition, Applicant's motion will be granted.").) Although the stay did not place "reasonable time limits on a petitioner's trip to state court and back" as directed by *Rhines*, 544 U.S. at 278, the Order did require Petitioner to file monthly status reports (*see* Stay Order dated May 5, 2004, Docket No. 16 at 5). Furthermore, my Order administratively closing the case, executed February 24, 2006, did place a time limit on Petitioner. Therefore, I conclude that the Stay Order was a valid exercise of Chief Judge Daniel's discretion under current

---

[7] "Mixed" petitions are "single petitions containing some claims that have been exhausted and some that have not." *Rhines* 544 U.S. at 271.

Supreme Court precedent.

With respect to parties' dispute regarding the stay's effect on the AEDPA statute of limitations for newly asserted claims, the Stay Order itself is dispositive of the issue. When Petitioner initially moved for a stay in this case to allow him time to exhaust his claims in state court, Respondents indicated that they had no objection to a stay "as it related to claims already asserted in petitioner's habeas petition." (Am. Resp., Docket No. 15 ¶ 2.) Respondents did, however, object to a stay with respect to any amendment that added new claims to the Application and requested that the stay be limited to Claim 2, the only claim, according to Respondents, that was included in Petitioner's Rule 35(c) motion. *Id.* ¶ 7–8. Chief Judge Daniel declined to limit the stay to Claim 2 as requested by Respondents, instead ordering the entire case stayed. (Stay Order dated May 5, 2004, Docket No. 16 at 5.) Chief Judge Daniel did, however, note that "any new claims Applicant seeks to present in the instant action are subject to the guidelines set forth in 28 U.S.C. § 2244(d)." *Id.* Given Chief Judge Daniel's express statement that any new claims would be subject to the AEDPA statute of limitations provision, it is clear that the Stay Order did not toll the statute of limitations for claims not previously asserted in the Original Petition.[8] Therefore, because the AEDPA statute

---

[8] Petitioner's argument that if the Stay Order is not deemed to have tolled the statute of limitations, then the Stay Order was effectively meaningless is without merit. The Stay Order as entered by Chief Judge Daniel and the stay and abeyance procedure approved by the Supreme Court in *Rhines*, protects a petitioner from losing the opportunity to pursue federal review of his state conviction and sentence for failure to abide by the total exhaustion requirement. *See Rhines*, 544 U.S. at 275. A stay for a mixed petition allows a petitioner the opportunity to avoid dismissal of his entire habeas action and return to state court to exhaust his state remedies with respect to his timely filed, but unexhausted claims. *See id.* Therefore, it protects against the AEDPA statute of limitations barring his habeas petition when he returns to federal court with his previously asserted but partially unexhausted claims. *See id.* This protection is a valid

of limitations expired prior to Petitioner's motion to amend his Petition, any claims that Petitioner seeks to add to his Petition must relate back to the claims set forth in the original Petition.  *See* Fed. R. Civ. P. 15(c).

Pursuant to Rule 15(c), an amendment relates back to the original filing if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  With respect to amendment of habeas petitions, however, the Supreme Court has determined that "[a]n amended habeas petition . . . does not relate back (and, thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Felix*, 545 U.S. 644, 650 (2005).  That the grounds for relief are related to the Petitioner's trial and conviction is, by itself, insufficient.  *Id.*  Rather, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Id.* at 659.

As noted above, Petitioner asserted three grounds for relief in his original, timely filed, habeas Petition: (1) he was denied his right to a speedy trial because the trial was delayed based on a prosecutor's conflict of interest; (2) he was denied is his right to counsel at all stages of the proceeding based on the trial court's *ex parte* communications with the jury during deliberations regarding their signed verdict forms; and (3) the CCA erred in affirming the trial court's denial of his motion for a new trial because the trial court erroneously based its decision on the credibility of the witnesses rather than the probability that the recanted testimony would have affected the jury's

---

concern, as determined by the Supreme Court, and is in no way meaningless.

verdict. In the proposed Amended Petition Petitioner sets forth five claims: (1) he was denied his right to due process under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), based on Walker's knowledge of Archuleta's perjured testimony and the prosecution's reliance on such testimony; (2) his Fifth and Sixth Amendment rights were violated when he was excluded from critical stages of the trial including the trial court's *ex parte* communications with the jury and court-monitored jury deliberations when the jury viewed evidentiary videotapes; (3) he was denied effective assistance of counsel because his counsel failed to assert Petitioner's right to be present during the viewing of the videotapes; (4) he was denied a fair trial because the trial court denied the jury's request for tapes and transcripts of 911 calls that had been admitted in to evidence; and (5) he was sentenced to consecutive sentences in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 482–83 (2000). Respondent argues that none of the five Amended Claims relate back to the Original Petition. Petitioner, however, argues that at least Amended Claims One through Three relate back to the Original Petition.

First, with respect to Amended Claims Four and Five, the parties do not dispute that the claims do not relate back. As the Original Petition does not include any factual allegations concerning the 911 tapes or the imposition of consecutive sentences, I conclude that Amended Claims Four and Five do not arise out of any of the same conduct, transactions, or occurrences set out in the Original Petition and, therefore, they are now barred by the AEDPA statute of limitations, *see* 28 U.S.C. § 2254(d), and amendment would be futile.

With respect to Amended Claim One, which alleges a *Brady* violation for unconstitutionally suppressing the fact that Archuleta's testimony was perjured and

based solely on Walker's presentation of evidence to him, I conclude that it relates back to Original Claim Three, which sought a new trial based on the newly discovered evidence that Archuleta recanted his testimony. Although Respondent is correct that there are differences in these claims, both claims arise from Archuleta's recanted testimony and his admission that his testimony was completely based on facts that Walker provided to him rather than any confession by Petitioner. The fact that Amended Claim One alleges a different legal theory than Original Claim Three is irrelevant to a determination of whether the claim relates back to the original Petition. In fact, if newly proposed claims were required to both arise from the same core of operative facts *and* assert the same legal theory, there would essentially be a complete bar to any new claims. Furthermore, I conclude that the fact that Original Claim Three focused on actions by the trial court while Amended Claim One focuses on actions by the prosecution is simply an aspect of the different legal theories asserted and does not serve to negate my conclusion that the two claims arise out of a common core of operative facts. Therefore, the addition of Amended Claim One is appropriate under Fed. R. Civ. P. 15(c).

Similarly, I conclude that, to the extent Amended Claims Two or Three assert constitutional violations based on the trial court's *ex parte* communications with the jury regarding the verdict forms, these amended claims relate back to Original Claim Two.[9] Indeed, Original Claim Two asserted a violation of the right to counsel because the trial

---

[9] I note that it appears that only Amended Claim Two asserts a claim based on the verdict forms. (*See* Docket No. 58-2 ¶ 61.) However, Petitioner's response addresses the two Amended Claims together and, therefore, I consider them together in this Order.

court had *ex parte* communications with the jury during jury deliberations regarding verdict forms without counsel or Petitioner present, or even consulted.  Conversely, the Original Petition did not allege any facts relating to the showing of the videotapes, including *ex parte* communications between the trial court and the jury, which are now included in the Amended Claims.  Nevertheless, Petitioner argues that the proposed Amended Claims relate back to Original Claim Two because they are of the same type, *i.e.*, the trial court's *ex parte* communications with the jury, and they occurred during the same time, *i.e.*, during jury deliberations.  *Felix*, however, teaches that such general similarity of "time and type" does not suffice.  In *Felix*, the two issues were of the similar general type, *i.e.*, out-of-court statements, and time, *i.e.*, used during the prosecutions case-in-chief, but they were "otherwise unrelated."  545 U.S. at 650.  Indeed, they were based on separate events which did not "arise from the same core facts" and were, therefore, not allowed to relate back with the timely filed claim.  *Id.* at 659, *accord id.* at 664 ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").  Here the record discloses that the *ex parte* communications occurred at different times—the video review during deliberations and the verdict discussion later, indeed at the end of deliberations—and were of differing subject matter.  Hence, the events did not share a "common core of operative facts" and, per *Felix*, relation back is not in order.

Accordingly, it is ordered:

1. Petitioner's Motion to Reopen the Habeas case (Docket No. 56) is granted.
2. Petitioner's Motion for Leave to File Amended Application for Writ of Habeas Corpus (Docket No. 57) is granted in part and denied in part.

3. Petitioner is granted leave to amend his Petition to add Amended Claim One set forth in the proposed Amended Petition (Docket No. 58-2) and the claim based on the trial court's *ex parte* communication with the jury regarding verdict forms.

4. Petitioner is denied leave to amend the Petition to add all other proposed claims set forth in the proposed Amended Petition (Docket No. 58-2).

5. Petitioner shall file an Amended Petition consistent with this Order no later than August 12, 2009.

DATED at Denver, Colorado, on July 13, 2009.

                                                    BY THE COURT:

                                                    s/ Walker D. Miller
                                                    United States Senior District Judge