IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 03-cv-01424-WDM

KENT ERIC LeBERE,

    Petitioner,

v.

JAMES ABBOTT, Warden, and
JOHN W. SUTHERS, the Attorney General of the State of Colorado,

    Respondents.

---

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS

---

Miller, J.

    This matter is before me on Petitioner Kent Eric LeBere's Amended Application for Writ of Habeas Corpus ("Amended Petition") (Docket No. 62). Respondents have answered the Amended Petition (Docket No. 70). After reviewing the pertinent portions of the record in this case including the Amended Petition, the Answer, and the state court record (Docket No. 74), I conclude that the Amended Petition should be denied.

*Background*

    Following a jury trial in case number 98CR4342 in the El Paso County District Court ("the trial court"), Petitioner was convicted of second degree murder and second degree arson on August 13, 1999. "According to the prosecution's evidence, defendant was seen leaving a bar with the victim around 12:30 a.m. on the night of the murder. At approximately 2:00 a.m., witnesses found the victim's van burning inside a car wash stall. Fire fighters subsequently discovered the victim's body inside the van." *People v.*

LeBere, No. 99CA2088, slip op. at 1 (Colo. Ct. App. Jan. 24, 2002) (LeBere I) (Docket

No. 62-6 at p.3).  Petitioner was acquitted of first degree murder, felony murder,

manslaughter, and sexual assault.  He subsequently was sentenced to forty-eight years

imprisonment for the murder conviction and twelve years imprisonment on the arson

conviction, to be served consecutively.

At trial, Ronnie Archuleta, a co-prisoner who was housed with Petitioner while

Petitioner awaited trial, testified that Petitioner had confessed the crimes to him.  After

trial, however, Archuleta contacted Petitioner's attorney and recanted his testimony,

stating that his entire testimony was based solely on information provided to him by J.D.

Walker, the lead detective in the investigation.  Archuleta executed an affidavit attesting

to these facts and further stating that Walker knew that Archuleta's testimony was not

based on any personal knowledge, but rather solely on the information provided by

Walker.  Based on this information, the Colorado Court of Appeals ("CCA") granted

Petitioner a limited remand on May 5, 2000.  After a hearing, the trial court denied

Petitioner's motion for a new trial, concluding that the absence of Archuleta's testimony

would not have affected the jury's verdict.  The CCA affirmed.  See id.  On June 17,

2002, the Colorado Supreme Court denied certiorari.  Petitioner did not petition the

United States Supreme Court for certiorari.

On October 16, 2002, Petitioner challenged his sentence pursuant to Colo. R.

Crim. P. 35(b).  The motion was denied on May 20, 2003, and Petitioner did not appeal.

On June 23, 2003, acting pro se, Petitioner initiated the instant action by filing a petition

for federal habeas corpus relief.  After obtaining counsel, Petitioner sought and

obtained a stay of these proceedings while he returned to state court to exhaust state

2

remedies for various claims in a postconviction Rule 35(c) motion.  On October 7, 2005,

the trial court denied the Rule 35(c) motion.  (*See* Docket No. 62-10.)  The trial court's

order denying the Rule 35(c) motion subsequently was affirmed on appeal.  *See People*

*v. LeBere*, No. 05CA2489 (Colo. Ct. App. Apr. 24, 2008) (*LeBere II*) (Docket No. 62-

14).  On August 18, 2008, the Colorado Supreme Court denied Petitioner's petition for

writ of certiorari in the postconviction Rule 35(c) proceedings.

On February 24, 2006, while the Rule 35(c) proceedings were pending in state

court, I administratively closed this case, subject to reopening for good cause.  On July

13, 2009, after the Rule 35(c) proceedings concluded, I granted Petitioner's motion to

reopen the case and granted in part Petitioner's motion to amend the original Petition.

On August 12, 2009, Petitioner filed the Amended Petition now before me.

Petitioner asserts two claims in the Amended Petition.  In his first claim, which

has two parts, he contends that he was denied due process under the Fifth and

Fourteenth Amendments when the state violated *Brady v. Maryland*, 373 U.S. 83

(1963) ("*Brady* claim").  Petitioner specifically alleges that the state violated *Brady* by (a)

relying on perjured testimony from Archuleta and Walker even though Walker knew the

testimony was false, and (b) failing to disclose to the defense that Walker met with

Archuleta and fed him information that enabled Archuleta to give false testimony.

Petitioner's second claim is that his Sixth Amendment right to counsel was violated

when the trial court instructed the jury to return to the jury room for further deliberations

to complete the verdict forms without informing counsel of the problem with the verdict

forms or asking counsel to consult on the issue ("right to counsel claim").

3

*Exhaustion of State Remedies*

Respondents first argue that the Amended Petition should be denied and this action dismissed because Petitioner's claims are unexhausted and procedurally barred. Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever*, 36 F.3d at 1534.

Furthermore, "the substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution." *Picard*, 404 U.S. at 278 (internal quotation marks omitted). However, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies before seeking federal relief. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

### 1. *Brady* Claim

Respondents first argue that neither part of Petitioner's *Brady* claim is exhausted. In particular, Respondents contend that, although Petitioner raised the issue of Archuleta's recanted testimony in his motion for a new trial on remand from the CCA during the course of his direct appeal, Petitioner did not identify his claim based on the recanted testimony as a *Brady* claim in the motion for a new trial. Respondents also contend that, even if Petitioner's motion for a new trial could be construed as raising the *Brady* claim, the *Brady* claim was not exhausted on direct appeal because Petitioner did not identify his claim as a *Brady* claim on appeal to the CCA following the denial of his motion for a new trial.

Respondents concede that Petitioner did raise his *Brady* claim in the trial court in his postconviction Rule 35(c) motion. However, Respondents maintain that the *Brady* claim also was not exhausted in the Rule 35(c) proceedings because the *Brady* claim was not fairly presented to the state courts in those proceedings. Respondents specifically rely on the fact that the trial court, in its order denying the Rule 35(c) motion, determined the *Brady* claim was procedurally barred because the factual basis for the claim, Archuleta's recanted testimony and Walker's misconduct, had been raised and

litigated by Petitioner in his motion for a new trial.  Respondents' argument that the

*Brady* claim was not exhausted in the state court postconviction proceedings also is

based on the fact that the CCA, in affirming the denial of the Rule 35(c) motion, refused

to consider the *Brady* claim on procedural grounds.

> [T]he factual basis for the *Brady* claim duplicates the factual
> basis supporting defendant's motion for new trial.  Although
> the nature of the legal claim here is superficially different,
> the requested relief is the same:  defendant contends that
> his conviction is based on perjured evidence, and should,
> therefore, be reversed.  Thus, the present *Brady* claim is
> merely a rephrasing of the motion for new trial, and we will
> not revisit what is essentially the same issue in a second
> appeal.

*LeBere II*, slip op. at 4, (Docket No. 62-14 at p.6).

I agree with Respondents that Petitioner did not fairly present his *Brady* claim to

the state appellate courts either on direct appeal or in the postconviction Rule 35(c)

proceedings.  Although the facts Petitioner alleges in support of his *Brady* claim were

presented to the state courts in his motion for a new trial and on direct appeal, that

alone is not enough to satisfy the fair presentation requirement.  *See Anderson*, 459

U.S. at 6 ("[i]t is not enough that all the facts necessary to support the federal claim

were before the state courts.").  Simply put, Petitioner did not exhaust his *Brady* claim in

the motion for a new trial or on direct appeal because he did not raise any *Brady* claim

in either the motion for a new trial or on direct appeal.  (*See* Docket No. 7, Apps. H, O.)

Petitioner's attempt to raise the *Brady* claim in the Rule 35(c) proceedings in

violation of a state rule that prohibits raising issues for a second time under a new

constitutional theory also does not satisfy the fair presentation requirement.  *See*

6

*Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (stating that "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance"); *Castille*, 489 U.S. at 351 (stating that fair presentation requirement is not satisfied if a claim is raised in a procedurally improper manner). Therefore, I find that Petitioner fails to demonstrate the *Brady* claim is exhausted.

2. Right to Counsel Claim

Respondents argue that Petitioner's right to counsel claim is not exhausted because, although the right to counsel claim was raised in the CCA on direct appeal, Petitioner did not raise the right to counsel claim in the Colorado Supreme Court in his petition for writ of certiorari on direct appeal. I disagree with Respondents' contention that Petitioner was required to raise the right to counsel claim in a petition for writ of certiorari to the Colorado Supreme Court in order to exhaust state remedies.

In order to exhaust state court remedies, a claim must be presented to the state's highest court if review in that court is available. *See O'Sullivan*, 526 U.S. at 845. However, "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available." *Id.* at 847-48. Therefore, if a state articulates that a certain avenue for relief is not part of its standard appellate review process, it is not necessary for a defendant to pursue that avenue in order to exhaust state remedies. *See id.*

The State of Colorado has articulated that review in the Colorado Supreme Court is not part of the standard state appellate review process. More specifically, the

Colorado Appellate Rules provide that:

> In all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1. Pursuant to Colo. App. R. 51.1, I find that review in the Colorado

Supreme Court is not required to exhaust state remedies if the claim in question was

presented fairly to, and relief was denied by, the Colorado Court of Appeals. As

Respondents concede, Petitioner fairly presented the right to counsel claim to the CCA

on direct appeal and the CCA rejected that claim. Therefore, I find that the right to

counsel claim is exhausted and I am not persuaded by Respondents's arguments that a

petition for writ of certiorari still is necessary to exhaust state remedies in Colorado. I

find support for this conclusion in the fact that four circuit courts have determined that

state rules similar to Colo. App. R. 51.1 eliminate the need to seek review in the state's

highest court in order to satisfy the exhaustion requirement. *See Lambert v. Blackwell*,

387 F.3d 210, 233 (3d Cir. 2004); *Adams v. Holland*, 330 F.3d 398, 401-03 (6th Cir.

2003); *Randolph v. Kemna*, 276 F.3d 401, 404-05 (8th Cir. 2002); *Swoopes v. Sublett*,

196 F.3d 1008, 1009-10 (9th Cir. 1999). Therefore, the fact that Petitioner did not raise

the right to counsel claim in the Colorado Supreme court in a petition for writ of

certiorari does not demonstrate that the right to counsel claim is unexhausted.

Respondents next argue that, even assuming Colo. App. R. 51.1 eliminates the

need to seek review in the Colorado Supreme Court in order to exhaust state remedies,

the rule does not apply to Petitioner's direct appeal because his direct appeal ended prior to the enactment of Colo. App. R. 51.1. Respondents primarily rely on *Wenger v. Frank*, 266 F.3d 218 (3d Cir. 2001), to support their argument that Colo. App. R. 51.1 cannot be applied retroactively to Petitioner's direct appeal. In *Wenger*, the United States Court of Appeals for the Third Circuit concluded that a Pennsylvania Supreme Court rule eliminating the need to seek discretionary review in that court in order to exhaust state remedies was not retroactive. *See id.* at 226. The Third Circuit based its conclusion on the prospective language of the Pennsylvania Supreme Court rule, a finding that the primary purpose of the Pennsylvania Supreme Court rule would not be served by retroactive application, and the Third Circuit's view that whether a particular remedy was or was not available is a question of objective historical fact that cannot be retroactively altered. *See id.* at 225-26.

In contrast to *Wenger*, two other circuit courts have held that state rules in Tennessee and Missouri, which are similar to both the Pennsylvania rule at issue in *Wenger* and Colo. App. R. 51.1, do apply retroactively. *See Adams*, 330 F.3d at 405; *Randolph*, 276 F.3d at 404. In *Randolph*, the Eighth Circuit reasoned that the Missouri rule was retroactive because the rule purported to clarify existing law and not change the law. *See Randolph*, 276 F.3d at 404. In *Adams*, the Sixth Circuit similarly concluded that the Tennessee rule was retroactive because the rule merely clarified the existing law in Tennessee. *See Adams*, 330 F.3d at 405. Significantly in *Adams*, the Tennessee rule expressly provided that it was applicable "[i]n all appeals from criminal convictions or postconviction relief matters from and after July 1, 1967." *See id.* at 401.

9

I find that Colo. App. R. 51.1 is most like the Tennessee rule at issue in *Adams*. Like the Tennessee rule, the plain language of Colo. App. R. 51.1 expressly provides that it applies to "all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974." Therefore, I find that Colo. App. R. 51.1 is merely a clarification of the existing law in Colorado and, as a result, I further find that Colo. App. R. 51.1 is retroactive to Petitioner's direct appeal.

### Procedural Default

Although Petitioner failed to satisfy the fair presentation requirement with respect to his *Brady* claim, I may not dismiss the *Brady* claim for failure to exhaust state remedies if Petitioner no longer has an adequate and effective state remedy available to him. *See Coleman*, 501 U.S. at 732. It is apparent that Petitioner no longer has an adequate and effective state remedy available to him because the state courts already have determined that Petitioner is procedurally barred from raising the *Brady* claim. Therefore, I find that Petitioner's *Brady* claim is procedurally defaulted.

As a general rule, federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman*, 501 U.S. at 730.

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th

10

Cir. 1998). "For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (internal quotation marks omitted).

The Court agrees with Respondents that Petitioner's *Brady* claim was rejected by the state courts on an independent and adequate state procedural ground. As a result, the Court may consider the merits of the *Brady* claim only if Petitioner demonstrates cause and prejudice for his procedural default or, alternatively, that a failure to consider the *Brady* claim will result in a fundamental miscarriage of justice.

To demonstrate cause for his procedural default, Petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [Petitioner]." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Petitioner fails to demonstrate cause and prejudice for his procedural default. He also fails to demonstrate that a failure to consider the *Brady* claim will result in a fundamental miscarriage of justice. In fact, Petitioner has not even addressed the procedural default issue. However, assuming Petitioner would attempt to demonstrate cause by arguing that counsel on direct appeal was ineffective, he cannot rely on

counsel's alleged ineffectiveness to establish cause for his procedural default because he has not exhausted state remedies for such an ineffective assistance of counsel claim. *See id.* at 488-89. Therefore, I find that the *Brady* claim is procedurally barred and must be dismissed.

*Merits of the Right to Counsel Claim*

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at

> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law. *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from
> [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669
> [(10th Cir. 2006)] (internal quotation marks and brackets
> omitted) (quoting *Williams*, 529 U.S. at 405). "The word
> 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually
> opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id.* at
> 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective

inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

I review claims in which Petitioner asserts factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable

14

determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his

'independent review' should be distinguished from a full de novo review of the

petitioner's claims." *Id*.

### Discussion

As noted above, Petitioner claims that his Sixth Amendment right to counsel was

violated when the trial court instructed the jury to return to the jury room for further

deliberations to complete the verdict forms without informing counsel of the problem

with the verdict forms or asking counsel to consult on the issue.

> The jury in the present case initially returned a verdict
> close to noon on the second day of deliberations.  After
> examining the verdict forms, but without announcing the
> verdicts, the trial court, in the presence of the prosecution
> and defense counsel, stated:
>
>> Ladies and gentlemen, I have reviewed the
>> verdict forms that you have provided me.  They
>> are not complete.  All the verdict forms need to
>> be signed. . . . I have no choice but to ask you
>> to return to deliberations, [and] see that all the
>> verdict forms are signed.  I will return those
>> [verdict forms] with the instructions to you.
>
> The jury then returned to deliberations.
>
> The jury subsequently signed all the verdict forms,
> and the court announced the verdicts.  The jury found the
> defendant guilty of second degree murder, but not guilty of
> first degree murder or reckless manslaughter.

*LeBere I*, slip op. at 7 (Docket No. 62-6 at pp.8-9) (alterations in original).  Petitioner

claims that the trial court effectively denied him his right to counsel by failing to discuss

the verdict form issue with his counsel even though counsel was present in the

courtroom at the time.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Under the Sixth Amendment, a defendant is entitled to the assistance of counsel at every critical stage of a criminal prosecution. *Kirby v. Illinois*, 406 U.S. 682, 690 (1972). "Critical stages are those steps in a criminal prosecution that hold significant consequences for the accused." *United States v. Collins*, 430 F.3d 1260, 1264 (10th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 695-96 (2002)). "Thus, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding." *Id.* (citing *Coleman v. Alabama*, 399 U.S. 1, 9 (1970)).

In addressing Petitioner's right to counsel claim, the CCA stated that "[a] denial of counsel occurs when counsel is either totally absent or altogether prevented from assisting a defendant during a critical stage of the proceeding." *LeBere I*, slip op. at 6 (Docket No. 62-6 at p.8). The CCA also stated that "[a] defendant in a criminal case has the right to have counsel present when the trial court gives instructions to the jury or responds to questions from the jury." *Id.* Ultimately, the CCA concluded that Petitioner's right to counsel at a critical stage of the trial was not violated because, "[a]lthough the trial court did not ask for defense counsel's input before . . . instructing the jury, nothing in the record indicates counsel was prevented from objecting to the trial court's procedure." *Id.*

I find that the CCA's rejection of Petitioner's right to counsel claim is not contrary to or an unreasonable application of clearly established federal law. The CCA's

decision is not contrary to clearly established federal law because the CCA applied the correct governing law as set forth in Supreme Court cases and Petitioner fails to identify any Supreme Court decision based on materially indistinguishable facts that reached a contrary result. *See House*, 527 F.3d at 1018. The CCA's decision also is not an objectively unreasonable application of clearly established federal law because Petitioner fails to identify any case in which counsel's failure to object to a trial court's action, despite being present when that action was taken and in the absence of anything that prevented an objection, amounts to an unconstitutional denial of counsel. *See id.* Petitioner also does not argue that the CCA unreasonably extended, or unreasonably refused to extend, a legal principle from Supreme Court precedent. *See id.* Therefore, Petitioner's right to counsel claim lacks merit and will be dismissed for that reason.

Accordingly, it is ordered:

1.     Petitioner Kent Eric LeBere's Amended Application for Writ of Habeas Corpus (Docket No. 62) is denied.

2.     This case is dismissed with prejudice.

3.     There is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED at Denver, Colorado, this 2nd day of February, 2011.

BY THE COURT:

_____
Walker D. Miller
United States District Judge

17